UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE CASTEL**

------------------------------------------------------------------ X

LOGICWORKS CORPORATION,

                          Plaintiff,

    -against-

REALCAPITALMARKETS.COM, LLC
d/b/a REAL CAPITAL MARKETS,

                         Defendant.

------------------------------------------------------------------ X

**08 CV 1514**

: No. 08-CV-_____
:
:
:
:
:
: **COMPLAINT**
:
:
:
:
:

FEB 1 3 2008

U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff Logicworks Corporation ("Logicworks"), by its undersigned counsel, hereby

alleges upon knowledge to itself and its own acts, and upon information and belief as to all other

matters, as follows against Defendant RealCapitalMarkets.com, LLC d/b/a Real Capital Markets

("RCM"):

## NATURE OF THE ACTION

       1.      This is an action for breach of contract arising out of RCM's brazen abdication of

its contractual duty to purchase web hosting and database management services from

Logicworks for a committed period.

## JURISDICTION AND VENUE

       2.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because the

matter in controversy is between citizens of different states and exceeds the sum or value of

$75,000.

       3.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(a)

because a substantial part of the events or omissions giving rise to the claims herein occurred in

this district. In addition, the contract upon which this action is based contains a forum selection

clause pursuant to which the parties agreed that venue would be appropriate in United States District Court for the Southern District of New York.

4.    This Court has personal jurisdiction over the parties. The contract upon which this action is based provides that in the event of litigation, each party consents to the exercise of personal jurisdiction over it by the United States District Court for the Southern District of New York. This Court also has personal jurisdiction over RCM in that RCM has, among other things, engaged in continuous, systematic and routine contacts within New York, engaged in a persistent course of conducting business within New York, and has engaged in purposeful activity within New York in connection with the matters in this lawsuit.

## THE PARTIES

5.    Logicworks is a New York corporation with its principal place of business located at 115 Avenue of the Americas, Fifth Floor, New York, New York 10013. Founded in 1993, Logicworks provides market-leading complex web hosting services to a diverse international clientele.

6.    On information and belief, RCM is a Delaware Limited Liability Company with its principal place of business located at 6120 Paseo Del Norte, Suite Q1, Carlsbad, California 92011. RCM is engaged in the business of providing online marketing and internet-based document storage for use in connection with institutional real estate sales.

## BACKGROUND

7.    On or about October 2, 2007, Logicworks and RCM entered into a Master Service Agreement (the "Agreement") pursuant to which Logicworks agreed to provide RCM with certain web hosting services for a period of twenty-seven (27) months (the "Committed Term"). A true and correct copy of the Agreement is annexed hereto as Exhibit A.

8.     In or about October 2007, Logicworks began to build RCM's servers using the hardware and software components that RCM selected. On or about November 5, 2007, the servers were ready to receive RCM's data. Rather than sending its data over the internet, RCM placed it onto an external hard drive and shipped it to Logicworks. Testing began on RCM's system soon after the data was transferred onto the servers.

9.     Over the course of the next five weeks Logicworks spent a considerable amount of engineering hours and significant resources on RCM's behalf. Despite these efforts, and in spite of the fact that RCM agreed to a committed term, RCM sent Logicworks a letter on December 14, 2007 wrongfully threatening to terminate the Agreement. A copy of the letter is annexed hereto as Exhibit B. On Wednesday, December 19, 2007, RCM again thumbed its nose at its contractual obligations by sending Logicworks a formal termination letter that, much like its predecessor, had no basis in the Agreement. A copy of the second letter is annexed hereto as Exhibit C.

10.    During the following weeks Logicworks repeatedly informed RCM that it had no right to terminate, and that it would therefore be held liable for an early termination charge pursuant to Section 4.03 of the Agreement. RCM, however, stated that it had no interest in remaining with Logicworks, as it was already negotiating with one of Logicworks' competitors. RCM stated that the deal under negotiation included an agreement by RCM to serve as a reference in favor of Logicworks' competitor and against Logicworks with respect to prospective web hosting clients. RCM added that it had no intention of honoring the early termination charge.

11.     With respect to the early termination of a Committed Term, Section 4.03 of the

Agreement states as follows:

> If Client terminates the Services prior to the conclusion of a
> Committed Term or Logicworks terminates the Services pursuant
> to a default, Client will be required to pay an early termination
> charge equal to (i) 75% of the full monthly charges for the
> services, without discounts, multiplied by the number of months
> remaining in the Committed Term plus (ii) any unpaid balances
> (together, the "Early Termination Charge"). The early termination
> charge will be due and payable on the date the Client's termination
> is effective. Client understands and agrees that in the event
> Services are terminated prior to the conclusion of a Committed
> Term, it will be difficult or impossible to ascertain Logicworks'
> damages, thus the Early Termination Charge is intended to
> establish reasonable liquidated damages in the event of
> cancellation and is not intended as a penalty.

Exh. A, pg. 3.

12.     Logicworks sent RCM an invoice for the early termination charge on or about

January 22, 2008. A copy of the same is annexed hereto as Exhibit D.

13.     In addition, Section 6.03 of the Agreement specifies that RCM "shall be

responsible for Logicworks' costs of collection, including reasonable attorneys' fees." Exh. A,

pg. 3.

14.     Despite Logicworks' due demands, RCM has refused to pay the early termination

fee.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

15.     Logicworks repeats and realleges each of the allegations in Paragraphs 1 through

14 above as if fully set forth herein.

16.     RCM and Logicworks entered into the Agreement, pursuant to which RCM

agreed to pay Logicworks $13,207.46 per month for a period of twenty-seven (27) months.

17.     Logicworks performed services at RCM's request and benefit from October 2007 continuing through December 2007 when RCM cancelled Logicworks' services prior to the expiration of the Committed Term.

18.     Logicworks has duly performed all obligations and conditions on its part to be performed under the Agreement and has duly demanded payment from RCM for the agreed upon early termination charge.

19.     RCM has wrongfully breached the Agreement by virtue of its terminating the Agreement prior to the expiration of the Committed Term and by refusing, despite due demand, to pay the agreed upon early termination charge of $225,627.47.

20.     By reason of the foregoing, Logicworks has been damaged by RCM's breach in an amount to be determined at trial, but not less than the sum of $225,627.47, plus interest at the maximum allowable rate, as well as attorneys' fees incurred as a result of bringing this action.

### PRAYER FOR RELIEF

WHEREFORE, Logicworks demands judgment as follows:

a.      On its First Cause of Action for Breach of Contract, damages against RCM in an amount to be determined at trial, but not less than the sum of $226,627.47 plus interest at the maximum allowable rate;

b.      Reasonable attorneys' fees and the costs and disbursements of this action; and

c.      Such other and further relief as the Court deems just and proper.

Dated: New York, New York
        February 12, 2008

                                    _____
                                    James J. Miuccio (JM-1722)

                                        65 Broadway
                                        Suite 747
                                        New York, NY 10006
                                        (212) 624-5858

                                    *Attorney for Plaintiff*
                                    *Logicworks Corporation*

Exhibit A



| Quotation | | | | | |
|---|---|---|---|---|---|
| Date | 9/26/2007 | | Account Executive | Rosett, Sara | |
| Quote # | QUO-02305-BYC67G | | Effective From | 9/20/2007 12:00:00 AM | |
| Rev # | 0 | | Valid Through | 10/18/2007 12:00:00 AM | |

**Quote Prepared For**

### Real Capital Markets

| Bill To | | Ship To | |
|---|---|---|---|
| Address | 6120 Paseo Del Norte | Address | 6120 Paseo Del Norte |
| | Suite Q-1 | | Suite Q-1 |
| | Carlsbad, CA 92011 | | Carlsbad, CA 92011 |

| Product | Qty | List Price | Net Price | Item Discount | Extended Amount |
|---|---|---|---|---|---|
| rcm-web4.client.logicworks.net | 1 | $658.35 | $658.35 | | $658.35 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |
| rcm-web3.client.logicworks.net | 1 | $658.35 | $658.35 | | $658.35 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |
| rcm-web2.client.logicworks.net | 1 | $658.35 | $658.35 | | $658.35 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |
| rcm-web1.client.logicworks.net | 1 | $658.35 | $658.35 | | $658.35 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |
| rcm-switch-sec.client.logicworks.net | 1 | $518.75 | $518.75 | $518.75 | $0.00 |
| Cisco Catalyst 2960G 24port Gb switch | 1 | | | | |
| rcm-switch-pri.client.logicworks.net | 1 | $518.75 | $518.75 | $518.75 | $0.00 |
| Cisco Catalyst 2960G 24port Gb switch | 1 | | | | |
| rcm-nfs2.client.logicworks.net | 1 | $1,339.80 | $1,339.80 | | $1,339.80 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 10k SCSI (RAID 1) + 6 x 300 GB 10k SCSI (RAID 5) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |

11 Beach Street, Third Floor, New York, NY 10013-2429

| Product | Qty | List Price | Net Price | Item Discount | Extended Amount |
|---|---|---|---|---|---|
| rcm-nfs1.client.logicworks.net | 1 | $1,339.80 | $1,339.80 | | $1,339.80 |
| 3.0 GHz Dual-Core 64-bit Xeon / 4 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) + 6 x 300 GB 10k SCSI (RAID 5) / Windows Server 2003 Enterprise / Server Backups / 300GB Transfer | 1 | | | | |
| rcm-lb-sec.client.logicworks.net | 1 | $500.00 | $500.00 | $500.00 | $0.00 |
| Dedicated Load Balancer ServerIron XL | 1 | | | | |
| rcm-lb-pri.client.logicworks.net | 1 | $500.00 | $500.00 | $500.00 | $0.00 |
| Dedicated Load Balancer ServerIron XL | 1 | | | | |
| rcm-fw-sec.client.logicworks.net | 1 | $495.00 | $495.00 | $495.00 | $0.00 |
| Dedicated Firewall. | 1 | | | | |
| rcm-fw-pri.client.logicworks.net | 1 | $495.00 | $495.00 | $495.00 | $0.00 |
| Dedicated Firewall. | 1 | | | | |
| rcm-fcswitch2.client.logicworks.net | 1 | $836.25 | $836.25 | $836.25 | $0.00 |
| 8 port Qlogic fibre channel switch | 1 | | | | |
| rcm-fcswitch1.client.logicworks.net | 1 | $836.25 | $836.25 | $836.25 | $0.00 |
| 8 port Qlogic fibre channel switch | 1 | | | | |
| rcm-db2.client.logicworks.net | 1 | $1,500.73 | $1,500.73 | | $1,500.73 |
| 2x 3.0 GHz Quad-Core 64-bit Xeon / 16 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise 32-bit / Fibre Channel HBA / Veritas Volume Manager / Veritas Cluster Manager / Server Backups / 300GB Transfer | | | | | |
| rcm-db1.client.logicworks.net | 1 | $1,500.73 | $1,500.73 | | $1,500.73 |
| 2x 3.0 GHz Quad-Core 64-bit Xeon / 16 GB DDR RAM / 2x 73 GB 10k SCSI (RAID 1) / Windows Server 2003 Enterprise 32-bit / Fibre Channel HBA / Veritas Volume Manager / Veritas Cluster Manager / Server Backups / 300GB Transfer | | | | | |
| rcm-array2.client.logicworks.net | 1 | $1,396.50 | $1,396.50 | | $1,396.50 |
| 12 Bay FC-SATA Storage Array / 4 x 250 GB SATA Hard Drives / 6 x 73 10K GB SATA Hard Drives / 2 x 80 SATA Hard Drives | 1 | | | | |
| rcm-array1.client.logicworks.net | 1 | $1,396.50 | $1,396.50 | | $1,396.50 |
| 12 Bay FC-SATA Storage Array / 4 x 250 GB SATA Hard Drives / 6 x 73 10K GB SATA Hard Drives / 2 x 80 SATA Hard Drives | 1 | | | | |
| Managed Database Services | 1 | $700.00 | $700.00 | | $700.00 |
| 1000GB Committed Backups | 1,000 | $1.40 | $1,400.00 | | $1,400.00 |

| | |
|---|---|
| Products Amount | $13,207.46 |
| Tax | $0.00 |
| Total | $13,207.46 |

**Payment Method:** _____

**Name:** _____

**CC#:** _____

**Exp Date:** _____ **Sec Code:** _____

**Commited Term Months**    27

Subscriber agrees to the fees and item(s) set forth herein by signing below

**Signature:** _____

**Print Name:**    Stephen Atter  % RCM1 ....

**Date:** Oct 3, 07

**Time:**

LOGICWORKS® MASTER SERVICE AGREEMENT

1. General.
This Master Service Agreement (the "Agreement") between Logicworks® and the
Client identified on the signature pages hereof ("Client") includes the
Quotation attached hereto as Appendix A (the "Quotation") and any other Addendum
signed by Client and Logicworks (the "Addendum"). If the terms of any Addendum
conflict with any other terms of this Agreement, the terms of the Addendum shall
govern. Any handwritten changes on the face of this Agreement which are
initialed by Logicworks and Client are incorporated herein and Logicworks and
Client agree to be bound by the terms of the Agreement as so modified. Client
acknowledges and agrees that any handwritten changes which are not initialed by
Logicworks shall not be deemed to be a part of this Agreement.

2. Covered Services; Quotations.
This Agreement governs the services described in the Quotation and any other
Logicworks services provided by Logicworks to Client including, without
limitation, upgrades, downgrades, additions and deletions to the services
described in the Quotation (the "Services"). Client will be required to sign a
new quotation in connection with each Service upgrade, downgrade, addition or
deletion. Once signed by Client, each new quotation will be incorporated by
reference in this Agreement and the term "Quotation", as used herein, will refer
to all effective quotations signed by Client.

3. Term; Commencement of Services.
The term of Client's Service will be month-to-month or, if Client has agreed to
a committed term (a "Committed Term"), the period specified in the applicable
Addendum or on the signature page of this Agreement; in the event of a conflict
between a Committed Term listed on this Agreement and the Committed Term listed
in an Addendum, the Addendum shall govern. If Client has elected a Committed
Term, the Committed Term will commence on the date the Services commence. Client
will be required to pay for the Services until the Committed Term expires or
upon an early termination pursuant to Section 4 hereof.

4. Termination
4.01 Termination by Logicworks. Logicworks has the right, but assumes no
obligation, to suspend or terminate the Services or terminate this Agreement if
a Default exists. A "Default" exists if (i) any fees related to the Services are
more than 30 calendar days past due, (ii) Client breaches any provision of this
Agreement, (iii) Client breaches any provision of Logicworks' Acceptable Use
Policy available at http://www.logicworks.net/acceptableuse.php (the "AUP"),
(iv) Client engages in conduct or activity that Logicworks, in its sole
reasonable discretion, believes may subject Logicworks to civil or criminal
litigation or damages or (v) there is a material adverse change in Client's
creditworthiness. If a Default exists pursuant to foregoing clauses (iii) or
(iv) above, Logicworks has the right, but assumes no obligation, to
suspend the Services without notice to Client. However, Logicworks
shall use best effort to provide Client with notice of such suspension,
and an opportunity to cure in accordance with industry standards.  In all
other cases of Default, Logicworks is required to provide Client with at least
ten (10) business days written notice before suspending or terminating the
Services or terminating this Agreement and Client will be permitted to cure the
Default during the notice period provided the Default is curable. If the
Services are terminated by Logicworks pursuant to a Default, Client will be
required to pay a reconnection fee (equal to the full monthly charges for one
month of the Services) in order to reactivate the Services and any such

reactivation shall be subject to Logicworks' consent in its sole discretion.
Logicworks may suspend or terminate the Services or terminate this Agreement at
any time in the absence of a Default by providing sixty (60) calendar days
notice to Client in writing or via e-mail. Termination by Logicworks will not
relieve Client of its obligation to pay all fees owing prior to and including
the date of termination. In addition, notwithstanding any other provision of
this Agreement, if Logicworks suspends or terminates the Services or terminates
this Agreement pursuant to a Default, Client will be relieved of its obligation
to pay the Early Termination Charge (as defined in Section 4.03(b) below), if
applicable.

4.02 Termination by Client. Subject to Section 4.03 hereof, Client may terminate
this Agreement and the Services by giving notice to Logicworks in writing or by
sending e-mail to cancel@Logicworks.net. Oral terminations will not be honored.
A Logicworks Default ("Logicworks Default") exists if: (a) Logicworks materially
breaches any of the terms of the Agreement. Except where termination is a result
of a Logicworks Default, if a termination notice is received by Logicworks prior
to the 15th day of any calendar month, the termination will be effective on the
last day of such calendar month. Except where termination is a result of a
Logicworks Default, if a termination notice is received by Logicworks after the
15th day of any calendar month, the termination will be effective on the last day of
the following calendar month, i.e. Client will be required to pay for the
Services for the remainder of the calendar month in which they terminate the
Services and for the entire following calendar month. In all other cases,
termination by Client shall be effective immediately upon notice to Logicworks,
subject to the terms of the Service Level Guarantees in the Addenda to this
Agreement.

4.03 Termination of Committed Term. (a) Either party may terminate the Services
at the end of a Committed Term by giving notice to the other party in writing or
via e-mail at least 30 calendar days prior thereto but, in the absence of such
notice, the Services shall automatically renew on a month-to-month basis at
Logicworks' then-current list prices until the Services have been
renewed or terminated in writing. (b) If Client terminates the Services prior to
the conclusion of a Committed Term for any reason other than a Logicworks
default (as defined in paragraph 4.02 above) or Logicworks terminates the
Services pursuant to a Default as defined in Section 4.01, Client will be
required to pay an early termination charge equal to (i) 75% of the full monthly
charges for the Services, without discounts, multiplied by the number of months
remaining in the Committed Term plus (ii) any unpaid balances (together, the
"Early Termination Charge"). The Early Termination Charge will be due and
payable on the date the Client's termination is effective. Client understands
and agrees that in the event Services are terminated prior the conclusion of a
Committed Term, it will be difficult or impossible to ascertain Logicworks'
damages, thus the Early Termination Charge is intended to establish reasonable
liquidated damages in the event of cancellation and is not intended as a
penalty.

5. Remedies.
If Client is dissatisfied with the Services or any policies or procedures of
Logicworks, Client's sole remedy shall be to terminate this Agreement in
accordance with Section 4 and discontinue using the Services, provided that
Client may be eligible for service credits provided by Logicworks in accordance
with an Addendum attached hereto.

6. Fees

6.01. Initial Fees. All one-time fees and fees for the first full month included in the Quotation are payable on the date the applicable Quotation is signed by Client. Logicworks will not be obligated to commence installation or initiation of the Services unless and until it has received payment in full of all initial fees. Billing for the monthly fee included in the Quotation will commence on the date the Services described in the Quotation are procured and dedicated to Client. Logicworks shall use commercial best efforts to make Services available to Client soon after the Services have been procured and dedicated to Client. If Logicworks is unable to make Services available to Client in a timely manner, Client may be eligible for service credit, at the sole discretion of Logicworks.

6.02. Monthly Fees; Integration Services. Client will receive monthly invoices for recurring monthly charges and one-time fees. In addition, fees for the second (2nd), thirteenth (13th), and twenty-seventh (27th) full month of service shall be waived. Client will be required to pay the full amount invoiced, including any taxes relating to the use of the Services, within 30 calendar days of receipt of the date of the invoice. Integration services, other than those set forth in the Quotation, requested by Client will be billed in hour increments based on Logicworks' then-current standard rate. A minimum of one (1) hour is required for all integration services.

6.03. Overdue Amounts. Any amounts not paid by Client when due shall bear interest at the lower of (i) a rate of 1.5% per month or (ii) the highest rate permitted by applicable law, until paid in full. If any amount owed by Client is overdue, (a) Logicworks may, but is not obligated to, suspend the Services (in accordance with the requirements of Section 4.01 hereof) until all payments are made and (b) Client shall be responsible for Logicworks' costs of collection, including attorneys' fees and costs.

6.04. Unauthorized Use. Client will be responsible for all use of the Services accessed through Client's account, whether or not such use is authorized by Client. Client will remain responsible for all charges to Client's account for any unauthorized use until (i) Client notifies Logicworks in writing regarding the unauthorized use and (ii) Logicworks has had a reasonable opportunity to cancel the account in question.

6.05. Payment of Bills. Logicworks shall render bills on a monthly basis and payment shall be due within thirty (30) days of receipt. Any Logicworks' bill shall become final and not subject to later dispute or challenge unless Client shall notify Logicworks in writing of any dispute or challenge to the bill within 45 days of its receipt and such writing specifies in detail the basis for any challenge or dispute. Unless such a detailed objection is received in accordance with this provision, Client shall have irrevocably waived any grounds for objection and shall thereafter be liable for the costs of collection, including reasonable attorneys fees.

7. Credit Approval.
Client may be subject to initial and continuing credit reviews. Client authorizes Logicworks to order and review credit reports detailing Client's credit status and history at any time prior to and while Services are provided. Logicworks reserves the right to withhold initiation or full implementation of the Services pending approval of Client's creditworthiness. If Client's creditworthiness is unacceptable, Logicworks may, but assumes no obligation to, refuse to provide the Services or require Client to deliver to Logicworks an advance payment of fees (a "Deposit") prior to the implementation of the services. In the event there is a material adverse change in Client's creditworthiness, Logicworks may, in addition to its other remedies, (i)

withhold or cease providing the Services (pursuant to Section 4.01 hereof), (ii)
decline to accept further requests for Services and (iii) condition its
provision of the Services on Client's reasonable assurance of payment or
delivery of a Deposit.

8. Content Responsibility; Disclaimer of Third Party Actions and Control; Force
Majeur.
Client understands and agrees that Logicworks and its network service suppliers
are not under any obligation to monitor, and are not responsible for, the
content of third party transmissions which may pass through the Internet and/or
the Services. Logicworks does not and cannot control the flow of data to or from
the Logicworks network and other portions of the Internet. Such flow depends in
large part on the performance of Internet services provided or controlled by
third parties. Acts or omissions by these third parties can interrupt the
Services, access to Client's Web site and/or Client's connection to the Internet
(or portions thereof). Although Logicworks will use commercially reasonable
efforts to take actions it deems appropriate to remedy and avoid such events,
Logicworks cannot guarantee that they will not occur. Accordingly, Logicworks
disclaims any, and all liability resulting from or related to such events. If a
party's performance of any part of this Agreement, other than the payment of
money, is prevented or delayed by reason of an act of God, act of war, act of
terrorism, fire, governmental action, labor dispute or other cause beyond the
performing party's control, then such party shall be excused from performance
for the length of such prevention or delay.

9. Client Materials; Acceptable Use.
Client agrees that it will not use the Services in ways that violate laws,
infringe the rights of others or interfere with the users, services, software or
equipment of the Logicworks network. Client represents and warrants that any
material which Client places on the Services, permits to be placed on the
Services with or without Client's authority, or on the Internet and/or the
Web through the Services, including, without limitation, Client's domain
name(s), will not (i) violate the rights, including without limitation,
copyright, trademark or other intellectual property rights, of any third party
or give rise to any claim of such violation, (ii) violate any Federal, state,
local or foreign law, rule or regulation of any type or nature (civil or
criminal), including, without limitation, laws with respect to child
pornography, harassment, or export controls or (iii) contain or transmit any
software disabling devices, computer worms, viruses or internal controls or (iv)
damage any property. Client also represents and warrants that it will not
distribute, or allow through its gross negligence a third party to distribute
off Client's server(s), unsolicited advertising, chain letters, or unsolicited
bulk e-mail ("SPAM"), or directly or indirectly use SPAM to advertise, direct,
promote, or attract traffic to Client's hosted services; attempt to gain
unauthorized entry to computers, data or networks; distribute libelous,
defamatory or racially offensive material or materials which include personal
attacks or hate speech over the Internet. Client also agrees that it will not
use the Services in any way that is inconsistent with the AUP available at
http://www.logicworks.net/acceptableuse.php, as modified by Logicworks from time
to time. As per Section 4.01 hereof, Client's violation of the AUP and/or
Client's illegal use of the Services shall be deemed a Default of this Agreement
and, in the event of such a Default, Logicworks has the right, but assumes
no obligation, to suspend the Services without notice to Client.
However, Logicworks shall use best effort to provide Client with notice
of such suspension, and an opportunity to cure in accordance with
industry standards. Client acknowledges and agrees that

Logicworks' liability insurance does not extend to Client's Web site or
materials. Client is advised to ensure that Client's liability
insurance provides coverage for Client's Web site and Client materials.

10. WARRANTIES.DISCLAIMERS.
LOGICWORKS WARRANTS ALL SERVICES UNDER THIS AGREEMENT WILL BE PERFORMED IN
ACCORDANCE WITH GENERALLY ACCEPTED INDUSTRY STANDARDS BY PERSONNEL THAT ARE
QUALIFIED TO PERFORM THE SERVICES AND THAT NO SERVICES INFRINGE OR VIOLATE ANY
U.S. PATENTS, TRADEMARKS, COPYRIGHTS, TRADE SECRETS, OR OTHER INTELLECTUAL
PROPERTY RIGHTS OF ANY THIRD PARTY. EXCEPT AS SET FORTH IN THIS AGREEMENT, THE
SERVICES ARE OFFERED ON AN "AS IS" BASIS AND LOGICWORKS AND ITS NETWORK SERVICES
SUPPLIERS DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING
WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE,
NONINFRINGEMENT AND TITLE, AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING,
USAGE OR TRADE PRACTICE. NEITHER LOGICWORKS NOR ITS NETWORK SERVICE SUPPLIERS
WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED, ERROR-FREE OR COMPLETELY
SECURE.

11. LIMITATION OF DAMAGES.
11.1. GENERAL DAMAGES. LOGICWORKS' AGGREGATE LIABILITY TO CLIENT RELATING TO OR
ARISING OUT OF THIS AGREEMENT OR THE SERVICES, WHETHER IN CONTRACT, TORT OR
OTHERWISE, SHALL NOT EXCEED THE TOTAL AMOUNTS PAID BY CLIENT TO LOGICWORKS FOR
THE SERVICES IN QUESTION DURINGTHE ONE-YEAR PERIOD IMMEDIATELY PRECEDING THE
EVENT WHICH GAVE RISE TO CLIENT'S CLAIMS.
11.2. CONSEQUENTIAL DAMAGES. IN NO EVENT WILL LOGICWORKS OR ITS NETWORK SERVICES
SUPPLIERS BE LIABLE FOR ANY DAMAGES, LOSSES OR CLAIMS OF ANY TYPE OR NATURE,
INCLUDING BUT NOT LIMITED TO LOSS OF DATA, LOSS OF REVENUE OR PROFITS, OR FOR
ANY OTHER SPECIAL, INCIDENTAL, DIRECT, INDIRECT OR CONSEQUENTIAL DAMAGES,
ARISING OUT OF OR IN CONNECTION WITH THE SERVICES AND/OR USE OF, INABILITY TO
USE OR THE ACCURACY OR COMPLETENESS OF ANY INFORMATION OR MATERIALS INCLUDED IN
THE SERVICES OR PRODUCTS PROVIDED HEREUNDER, EVEN IF
LOGICWORKS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

12. Indemnification.
12.1 Client shall indemnify and hold Logicworks and its employees, agents,
shareholders, officers, directors and successors and assigns harmless from and
against any and all claims, damages, liabilities, costs and expenses (including
attorneys' fees and costs and settlement costs) arising out of (i) any breach by
Client of any of the representations, warranties, covenants or agreements set
forth in this Agreement including without limitation the AUP (from time-to-time
in effect), (ii) Client's use of the Services or arising with respect to any
content, software or materials which Client places on the Services, (iii)
damages caused by equipment owned by Client and located on Logicworks'   .
datacenter facilities or (iv) damage to Logicworks' datacenter facilities caused
by Client or its representatives.

12.2 Subject to Sections 11.1, 11.2 and 14, Logicworks shall indemnify and hold
Client and its employees, agents, shareholders, officers, directors and
successors and assigns harmless from and against any and all claims, damages,
liabilities, costs and expenses (including attorneys' fees and costs and
settlement costs) arising out of (i) any breach by Logicworks of any of the
representations, warranties, covenants or agreements set forth in this
Agreement, (ii) Logicworks' Services or arising with respect to any content,
software or materials which Logicworks uses to provide and/or deliver its
Services, (iii) damages caused by equipment owned by Logicworks or Logicworks'
other customers or (iv) damage to Client's database and system caused by Client
or its representatives.

13. Changes in Agreement, Fees and Services.
Logicworks may modify this Agreement, change the fees related to the Services or
discontinue or revise any aspect of the Services upon sixty (60) calendar days
written notice to Client in writing or via e-mail. Client shall be deemed to
have accepted any such changes or modifications by continuing to use the
Services after the end of a 60-day period. If any such change has a material
adverse effect on Client, Client may terminate the Services by providing written
notice to Logicworks before the end of the 60-day period. If Client terminates
the Services pursuant to this Section 13, Client will not be subject to the
Early Termination Charge but will be required to pay all other fees to and
through the date of termination.

14. UNAUTHORIZED ACCESS.
NEITHER LOGICWORKS NOR ITS NETWORK SERVICES SUPPLIERS WILL BE LIABLE FOR
UNAUTHORIZED ACCESS (i.e. "HACKING")  TO LOGICWORKS' OR CLIENT'S TRANSMISSION
FACILITIES OR PREMISE EQUIPMENT OR FOR UNAUTHORIZED ACCESS TO OR ALTERATION,
THEFT OR DESTRUCTION OF CLIENT'S DATA FILES, PROGRAMS, PROCEDURES OR INFORMATION
THROUGH ACCIDENT, FRAUDULENT MEANS OR DEVICES, OR ANY OTHER METHOD, REGARDLESS
OF WHETHER SUCH DAMAGE OCCURS AS A RESULT OF THE NEGLIGENCE OF LOGICWORKS OR ITS
NETWORK SERVICE SUPPLIERS.  HOWEVER, LOGICWORKS AGREES TO USE ITS BEST EFFORTS
TO RECTIFY ANY VULNERABILITIES OF WHICH LOGICWORKS HAS ACTUAL KNOWLEDGE IN ITS
TRANSMISSION FACILITIES OR PREMISE EQUIPMENT. NOTWITHSTANDING THE FOREGOING,
LOGICWORKS MAY BE LIABLE FOR PHYSICAL SECURITY BREACHES CAUSED BY LOGICOWRKS'
GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.

15. Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.
This Agreement shall be governed by and construed according to the laws of the
State of New York. Client hereby submits to the exclusive jurisdiction of the
United States District Court for the Southern District of New York and of any
New York State court sitting in New York City for purposes of all legal
proceedings arising out of or relating to this Agreement or the Services without
regard to conflict of laws provisions and principles thereof. Each of Logicworks
and Client hereby irrevocably waives any and all right to trial by jury in any
legal proceeding arising out of or relating to this Agreement or the
transactions contemplated hereby.

16. Assignments.
Client shall not assign this Agreement or, unless set forth in an Addendum,
resell the right to use the Services without the prior written consent of
Logicworks.  A merger or sale of Client's assets shall not be deemed a resale of
Logicworks' Services.

17. Counterparts; Integration; Effectiveness.
This Agreement may be signed in any number of counterparts, each of which shall
be an original, with the same effect as if the signatures thereto and hereto
were upon the same instrument. This Agreement constitutes the entire agreement
of the parties hereto and supersedes any and all prior agreements and
understandings, oral or written, relating to the subject matter hereof. This
Agreement shall become effective upon Logicworks' acceptance of Client's
signature on signature page hereof.

18. Name and Trademarks.

Client permits Logicworks to use its name and trademarks in listings of
Logicworks' clients for promotional, marketing and advertising purposes,
provided that such use accurately reflects the relationship of the parties.

19. Survival.
All terms of this Agreement which should by their nature survive the termination
of this Agreement shall so survive including but not limited to Sections 2, 4,
5, 6, 8, 9, 10, 11, 12, 14, 15 and 19.

20. Notices.
All notices given by Client to Logicworks shall be in writing and delivered (via
regular mail) to Logicworks at 11 Beach Street, New York, NY 10013, or by fax to
(212) 625-5463. All notices required to be delivered to Client in writing shall
be delivered (via regular mail, e-mail or fax) to the address, e-mail address or
fax number indicated in the Quotation or the Client information form. Any notice
or communication provided shall be effective (a) if by regular mail, three days
after deposit in the mails with postage prepaid, (b) if by e-mail, on the next
business day after it shall have been given with electronic confirmation, or (c)
if by facsimile, on the next business day after it shall have been given by
facsimile transmission with electronic answer back confirmation.

21.  Ownership of Data and Records.
It is understood and agreed that Client is the owner of any and all records, log
files, user and site information, and/or data created, maintained, and/or stored
on and/or through Client's domain, website and/or database.  Logicworks agrees
that it will not use, copy, modify, access, disclose or otherwise take any other
action with respect to such records, log files, user and/or site information,
and data except for the limited purpose of fulfilling its obligations under this
Agreement, to comply with Client's instructions, or in response to legal or
governmental requirements.

22. No Changes.
Client represents and warrants that it made no changes to this Agreement prior
to providing this Agreement to Logicworks for acceptance other than handwritten
changes initialed by both Client and Logicworks.

23. Confidentiality.
Should any of the parties disclose any of its confidential and proprietary
information for any purpose in connection with this Agreement, the party
receiving the information will use the same degree of care to maintain the
secrecy of the information of like kind, and may use the information only for
the purpose of performing its obligations under this Agreement. Except for all
of the Client's electronically stored data, which the parties agree is
automatically deemed confidential information, all materials and information
that are confidential must be clearly identified or marked as confidential at
the time of disclosure. None of the parties may disclose the terms and
conditions of this Agreement to any third party except as required by law or by
governmental regulations, requirement or order, or as may be necessary to
establish or assert its rights hereunder. Notwithstanding anything to the
contrary, it is agreed that no information provided by Logicworks to Client or
Client to Logicworks shall be deemed to be confidential information unless said
information is set forth in a writing that bears a clear legend identifying the
contents as confidential and proprietary information of Logicworks, or Client as
the case may be and such writing is accepted by a duly authorized representative
of Client or Logicworks as the case may be. Nothing in this Agreement prohibits
or limits a party's use of information (including but not limited to ideas,
concepts, know-how, techniques, and methodologies) (i) previously known to it,

(ii) independently developed by it, (iii) acquired by it from a third party
which is not, to its knowledge, under an obligation no to disclose such
information, or (iv) which is or becomes publicly available through no breach of
this Agreement.

BY SIGNING BELOW, CLIENT AGREES TO THE TERMS AND CONDITIONS DESCRIBED ABOVE AND
ANY
OTHER QUOTATION OR ADDENDUM SIGNED BY CLIENT AND ATTACHED HERETO, AND TO A
COMMITTED TERM OF 27 MONTHS:

COMPANY NAME ("CLIENT"): *Real Capital Markets. com, llc*

BY (SIGNATURE):

NAME & TITLE: *Stephen J. Alper    CEO*

DATE: *Oct 2 07*

Billing Approval Agreed to and Accepted:
LOGICWORKS
Authorized Credit: $_____
By: _____
By: _____ Name:
Title:
Activation Date: ____/____/____ Date:

Modified 9/01/03 4

Addendum No. 1 to Master Service Agreement between Logicworks℗ and
Real Capital Markets ("Client")

Logicworks℗
Dedicated Server Agreement

This Addendum sets forth the agreement between Logicworks℗ and Client concerning
an arrangement whereby Client will use server(s) provided by Logicworks.

1. Dedicated Server Service.
Logicworks will provide Client with use of Dedicated Server(s), as specified in
Quotation, located in Logicworks' datacenter facilities, Network Operations
Center support and server monitoring and maintenance (together, the "Dedicated
Server Service"). Subject to the restrictions of the Master Service Agreement
and this Addendum, Logicworks will provide network maintenance and
configuration, maintenance and repair of the Dedicated Server hardware, and
administration and configuration of the Dedicated Server operating system(s) and
pre-installed tools and applications. The datacenter facilities and the Dedicated
Server(s) are provided on an "AS-IS" basis.

2. Committed Term.
The Committed Term for the Dedicated Server Service is 27 months, commencing on
the date the Dedicated Server Service is activated for billing purposes, or as
indicated on subsequent Quotations, whichever is longer. If Dedicated Server
Service is being renewed, Committed Term will begin on signature date of this
Agreement or on the day after the previous Committed Term, whichever is later.

3. IP Addresses. Client is entitled to rent four (4) Internet Protocol addresses
per Dedicated Server. Any additional IP addresses must be rented from Logicworks
at the then-current list price. All IP addresses remain the property of
Logicworks and will be retained by Logicworks when the Dedicated Server Service
is terminated. Although Client acknowledges that the said IP Addresses are the
sole property of Logicworks, Logicworks may only cause an alteration of the IP
Address assignments by providing Client with a minimum of twenty days advance
written notice of a change of an IP Address; it being further agreed that
Logicworks shall then also provide Client with replacement IP Address
assignments so that Client can cause all changes to be recorded with the
appropriate DNS registry for the corresponding domain name/URL. Logicworks
shall use reasonable efforts to avoid any disruption to Client resulting from
such renumbering requirement.

4. Security. Client is prohibited from physically modifying or otherwise
handling the Dedicated Server(s) hardware and from entering Logicworks'
datacenter facilities. Any modification made to the operating system or pre-
installed tools and applications of the Dedicated Server(s) must be made in
accordance with practices and procedures specified by Logicworks. Client will
have remote logon access to Client's Dedicated Server(s) based on Secure Shell,
both SSH1 and SSH2, for UNIX servers or Microsoft Remote Desktop Protocol for
servers running Windows 2000 or later. Logicworks reserves the right to permit
access to certain services via Virtual Private Network (VPN) only. Client
acknowledges that with the aforementioned remote logon access Client bears
shared responsibility for security with Logicworks. Although Logicworks cannot
enforce such policies, Logicworks recommends that Client adheres to security
practices that are in accordance with commercial industry standards and
Logicworks can provide recommended security procedures upon request or can be
found at http:// www.logicworks.net/page.php/prmID/247, although adherence to

such procedures also does not guarantee security. Logicworks does not guarantee the security of the Dedicated Server(s), the datacenter facilities or Logicworks' network. However, Logicworks agrees to use its best efforts to provide up-to-date electronic and physical security to the Dedicated Server(s), the datacenter facilities and Logicworks' network on a good faith basis consistent with best industry practices. Logicworks will use its best efforts to assist in network security breach detection, identification and/or auditing, but shall not be liable for any inability, failure or mistake in doing so. Notwithstanding the foregoing, Logicworks will only be liable for physical security breaches caused by its gross negligence or willful misconduct.

5. Restricted Activities.
5a. General. If Client engages in any of the following prohibited activities, Logicworks will not be required to perform basic tasks associated with the Service: (i) altering TCP/IP properties on the port interface, (ii) making any modifications that would prohibit server from rebooting properly or, (iii) modifying or deleting contents of Logicworks administrative directories.

5b. Microsoft Operating Systems. If Client engages in any of the following prohibited activities, Logicworks will not be required to perform basic tasks associated with the Service: (i) altering NetBIOS over TCP/IP on the port interface, (ii) disabling file sharing, (iii) changing administrator rights, account(s), password(s) (subscriber should contact Logicworks to make administrative account modifications), or removing Logicworks' accounts from administrator's group, (iv) modifying or disabling scheduled tasks or Task Scheduler jobs, (v) removing Client's server(s) from the domain or, (vi) disabling the trust between Client's domain(s) and the Logicworks domain. This paragraph 5b does not apply to Clients using a UNIX platform.

5c. UNIX Operating Systems. If Client engages in any of the following prohibited activities, Logicworks will not be required to perform basic tasks associated with the Service: (i) modifying secure shell (ssh) configurations, (ii) modifying password authentication modules (PAM), (iii) modifying or deleting the Logicworks account(s), (iv) changing the root password (Client should contact Logicworks to make root account modifications), (v) modifying Up2date, required for patching servers, or (vi) otherwise preventing access from Logicworks administrative network. This paragraph 5c does not apply to Clients on platforms using Microsoft Operating Systems.

5d. If Logicworks cannot perform basic hosting services for any of the foregoing reasons of this paragraph 5, Client will nonetheless be required to pay the monthly fee described in the Quotation. In the event that Client performs any of these actions, Logicworks may, at its sole discretion, charge integration and/or set up fees to restore the server pursuant to Section 11.

6. Deprecated Operating Systems.
Logicworks reserves the right to require Client to have its server(s) rebuilt in the event that the Operating System vendor no longer supports Client's current version of Operating System, creating a potential security risk. In such event, Logicworks will provide Client 30 days written notice, and shall provide the following upgrade provision at no additional cost to client: server rebuild and 3 hours of integration for migration. Failure to upgrade is deemed a security risk to Client and Logicworks, and Logicworks reserves the right to suspend service if Client does not actively pursue upgrade. Logicworks is not responsible for integrating 3rd Party applications into current version of Operating System, in accordance with the terms of Section 9.

7. No Lease/Ownership.
This Addendum is a services agreement and does not constitute a lease of any
real or personal property. Client acknowledges and agrees that Client has not
been granted any real property interest in the Logicworks' data facilities or
any other Logicworks premises and Client has no right as a tenant or otherwise
under any real property or landlord/tenant laws, regulations or ordinances.
Client also acknowledges and agrees that Client has no ownership interest
in the Dedicated Server(s).

8. Upgrades.
In the event Client elects to upgrade Client's Dedicated Server(s), Client will
be required to sign a new Dedicated Server Addendum and Quotation with a
Committed Term equal to or, at Client's discretion, exceeding the number of
months remaining on Client's original contract. Pricing and discounts, if any,
will be determined on the basis of the new Committed Term. Client will be
required to pay a new set-up fee in connection with each upgrade where a server,
array or device is added or rebuilt at Client's request. Client will not be
subject to Early Termination Charges for contracts terminated in connection with
an upgrade. /

9. Third Party, Client Software and Collocation.
9a. In the event Client provides Logicworks with third party software for
installation on the Dedicated Server(s), Client represents and warrants that
Client has all requisite licenses which permit use of such software on the
Dedicated Server(s) and Client hereby authorizes Logicworks to use such software
on the Dedicated Server(s) during the term of this Agreement, unless earlier
rescinded by Client in writing. For each unit of installed software, Client will
be required to provide Logicworks with copies of the applicable software CD,
license key and Certificate of Authenticity. Client shall indemnify and hold
Logicworks and its employees, agents, shareholders, officers, directors and
successors and assigns harmless from and against any and all claims, damages,
liabilities, costs and expenses (including attorneys' fees and costs and
settlement costs) arising out of (i) any breach by Client of any of the
representations, warranties or covenants contained in this paragraph 9 or (ii)
Client's relationship with the manufacturer of any software installed on the
Dedicated Server(s) pursuant to this paragraph 9. Logicworks shall not be liable
for errors or interruptions of service(s) caused by third party software
installed by Client or at Client's request or by software written by Client, or
third party evaluation software. Any work performed in the course of diagnosing
and recovering from such errors shall be billed to Client at Logicworks'
applicable hourly rate. Logicworks shall not be liable for any inability, delay,
failure or mistake in diagnosing or repairing such errors.

9b. If Client uses Microsoft software provided by Logicworks, pursuant to
Logicworks' Service Provider Agreement with Microsoft, Client agrees that with
respect to any Microsoft software (or software product) Client shall not (i)
remove, modify, or obscure any copyright, trademark or other proprietary rights
notices that appear on the software (or software product) or appear during their
use or (ii) reverse engineer, decompile, or disassemble the software (or
software product). Additionally, the use of any such Microsoft software (or
software product) provided by Logicworks shall be subject to (a)
Microsoft Services Provider Use Rights, a copy of which is available at
http://www.microsoft.com/serviceproviders/licensing/spla.asp (the "SPUR") and
the SPUR is incorporated into this Agreement by reference and (b) Client
acknowledges that Microsoft disclaims, to the extent permitted by law, all
warranties with respect to such software (or software product) and any liability

by Microsoft for any damages, whether direct, indirect or consequential, arising
from use of the software or Logicworks' services.

9c. Pursuant to Quotation, Client may collocate devices (including but not
limited to VPN, IDS, search devices, etc.) in Logicworks' datacenter facilities.
Client may not collocate any servers that may otherwise be provided by
Logicworks as a part of the Dedicated Server Service. Client acknowledges that
Logicworks will only physically install such devices in its datacenter
facilities and that Logicworks shall not be liable for errors or interruptions
of service(s) caused by collocated devices. On-going support for such devices
shall be limited to device reboot, upon Client request or as previously agreed
to in writing. In collocating such devices, Client acknowledges the following:
(i) Logicworks' insurance does not extend to collocated devices, (ii) Client
does not have physical access to devices, unless previously scheduled with
Logicworks and such access is with Logicworks escort, (iii) it is Client's
responsibility to procure a replacement for any failed devices, and that such
replacement may result in the requirement for Logicworks to provide Integration
Services to Client as described in Section 6.02 of the Master Service Agreement;
Logicworks recommends that such devices be provided in pairs for redundancy and
minimize service unavailability in the event of device failure, (iv) Client will
not be permitted to have Logicworks remove any devices until the terms of this
Addendum and the Master Service Agreement are satisfied and Client has paid
Logicworks any and all overdue amounts due including any applicable Early
Termination Charges, and (v) Client has not been granted any real property
interest in the Logicworks datacenter facilities and Client has no right as a
tenant or otherwise under any real property or landlord/tenant laws, regulations
or ordinances.

10. Dedicated Server Maintenance.
10a. Logicworks reserves the right to perform routine maintenance on the
Dedicated Server(s) which may result in inaccessibility of the Dedicated
Server(s). Routine maintenance shall take place between 12:00 AM EST and 6:00 AM
EST and shall not exceed one (1) hour. Logicworks will notify Client twenty-four
(24) hours in advance of the maintenance window. Logicworks may also perform
emergency preventive maintenance at any time without notice on network
equipment. Logicworks also reserves the right without reservation to apply
security patches to certain software or operating system components to address
vulnerabilities whereby an unauthorized user can either hijack or disable a
server, regardless of whether such patches interfere with the proper functioning
of third party or proprietary software installed by Client. Except as otherwise
set forth, Logicworks shall not be liable for any inability, delay, failure or
mistake in identifying the need for or implementing a security upgrade.
Logicworks will provide Client notice via email of patch in the prior business
day. If Client does not want patch applied, Client must notify Logicworks in the
prior business day. If Client chooses to not have such patch applied, Client may
be subject to the terms of Section 11.

10b. If Client has elected to receive any of Logicworks' Shared Device Services,
as per Quotation (or otherwise requests these services to be added in writing),
including but not limited to shared firewall, shared load balancing, or services
associated with any form of shared storage, Client acknowledges that while
Logicworks will use commercially reasonable efforts to insure the performance of
such services, such services could be adversely affected by other clients
utilizing the shared device, and Logicworks shall not responsible for such
adverse effect. Client acknowledges that these services are available on a
dedicated basis at an additional cost. Client also acknowledges that Logicworks
reserves the right, in its sole discretion, to take appropriate action if

Client's use of the services is adversely affecting other Logicworks users,
including without limitation, suspending or terminating Client's use of such
Services or at Client's election, requiring Client to purchase services that are
dedicated exclusively to Client.

11. Hard Disk Failure and Hardware Replacement.
In the event of a Dedicated Server hard disk failure, Logicworks' sole
obligation will be to restore or replace the Dedicated Server. Unless otherwise
provided for in Section 14 of this Agreement, Logicworks will have no obligation
to restore Client data. In the event of failure of any hardware components,
including processor(s), RAM, hard disk(s), motherboard, NIC card, and other
hardware components, Logicworks will replace any failed component within 2
hours, plus disk formatting time, from diagnosis of part failure.

12. Authorized Contacts.
It is solely the responsibility of Client to provide Logicworks with current
contact information in order for Logicworks to provide any support assistance
and fulfill Service Requests. For definitive contact validation, Client should
utilize MyLogicworks, found at https://my.logicworks.net/, for submission of
Service Requests and managing authorized contacts. All requests received through
MyLogicworks will be considered to be valid requests. Logicworks reserves the
right to determine, in good faith, any request invalid, and may require a call
back to the telephone number that Logicworks has on record.

13. Alert Notification.
In addition to being contacted by Logicworks Network Operations Center, Client
may request to receive email alert notifications for server or service
unavailability. Logicworks will not be liable for incorrect contact information
and/or failure of Logicworks to contact Client due to Client telecommunications
equipment failure(s). Logicworks will not be responsible for providing alert
notifications for Third Party and Client Software as specified in section 9 of
this Agreement, unless agreed to in writing.

14. Backup and Data Restoration Service.
If Client has elected for Backup and Data Restoration Service in Quotation,
Logicworks will backup the Data on a daily basis.

14a. Archival Procedures. Logicworks will provide Client with storage repository
space for the purpose of storing backup data from the Dedicated Server Service
in the amount (in GBs) specified in the Quotation. The archival period will vary
by the amount of storage Client has selected in the Quotation and amount of data
to be backed up. Unless otherwise specified by Client in writing, Logicworks
shall select backup methodology. Logicworks will, as necessary, remove as many
of the oldest backup files needed so as to allow space for the newest backup to
complete. Logicworks shall replicate Client's data to a separate physical
storage repository residing off-site from Client's Dedicated Server once per
day. Client acknowledges that this is not an archival service, and that the
secondary storage repository shall be an exact copy of the primary storage
repository. In the event that there is a failure of the scheduled backup
process, due to a reason not listed in Section 5 of this Addendum, Logicworks
will attempt to manually resume the backup process. In the event that Logicworks
cannot manually complete the scheduled backup within 72 hours, Logicworks shall
notify the Client of backup failure via email. Unless otherwise specified by
Client , Logicworks shall be responsible for copying Client's backup data from
the secondary backup server to tape and for contracting with a 3rd Party to
periodically rotate tapes off-site. Client acknowledges that Tape Backup is for
the sole purpose of disaster recovery and will not be used as a source from

which backups shall be routinely restored. If Client has failed to purchase
enough space (in GBs) so that Logicworks is unable to restore from backup from
the last two (2) days, Logicworks shall not be responsible to restore data, if
requested or in the event of hardware failure.

14b. Transaction Log Replication. If Client elects for Transaction Log
Replication ("TLR") service in Quotation, Logicworks shall establish service for
backing up to five (5) database(s) and establishing TLR per Client's
instructions. Transaction logs and database backups shall follow the procedures
as described in Section 14a of this Agreement. Client may also elect to have
Logicworks ship logs to another server so long as it is a part of Client's
Dedicated Server Service. If Client adds additional databases, Client will need
to notify Logicworks, in writing, of additional databases to be included in the
TLR Service, and may be subject to an additional cost, pursuant to additional
quotation or otherwise agreed to in writing. Logicworks shall monitor databases
to ensure that TLR is occurring to desired destination, and shall re-establish
TLR in the event that it has stopped. Additionally, Logicworks shall restore
Client's databases according to this Section 14.

14c. Restoration. Logicworks will commence restoration of Data of the most
recent backup within two (2) hours of Client's request or in the event of
hardware failure. Client acknowledges that completion of restoration can be
affected by factors such as network and/or conditions or disk formatting time.

14d. Limitations. The method used to back up the Data and the time of day when
backup activities take place will be selected and/or altered by Logicworks at
Logicworks' discretion. However, Logicworks shall will use best efforts to
ensure that backup activities do not take place during the hours of 9:00 a.m.
(EST) to 8:00 p.m (EST). If Client terminates Backup and Data Restoration
Service, Logicworks will also remove Client's data from the applicable backup
servers upon request of termination. Client acknowledges that in rare instances,
Logicworks may not be able to restore certain files due to data corruption,
operating system incompatibilities or access limitations that occurred during
the backup procedure. If Logicworks fails to restore the Data per the
requirements of this Agreement, or if there are any errors, mistakes, or
inaccuracies of any type or nature in doing so, Client's sole remedy for each
failure will be a credit equal to the monthly fee charged to Client for use of
Dedicated Server(s) plus the monthly fee charged to Client during the previous
month for Data restoration, and if deemed appropriate by Logicworks rebuild of
hardware in accordance with the terms of Section 11.

15. Traffic Analysis Service.
If Client has elected for Traffic Analysis service in Quotation, Logicworks will
dynamically generate traffic analysis reports and make them available to Client.
Traffic Analysis reports will include summary information on pages viewed, paths
taken through the Website, files accessed, visitors, demographics, activity,
errors, referrers, and browsers and operating systems. Traffic analysis reports
include daily, weekly and monthly reporting. Traffic analysis reports will not
be available quarterly or annually, unless otherwise arranged between Client and
Logicworks pursuant to a Quotation. Client must request traffic analysis reports
and profile changes in advance of the month or period being analyzed, (i.e.
reports and profile modifications cannot be requested on a retroactive basis.)
Reports are typically generated within twenty-four (24) hours of the analyzed
period; reporting intervals may vary and won't exceed one (1) week. Reports are
available in downloadable formats and Logicworks is required to maintain reports
on-line for 90 days from the end of any given calendar month. Traffic analysis
reports will not be generated during scheduled maintenance windows. At the end

of Committed Term or earlier termination of the Traffic Analysis Service,
Logicworks will maintain reports on-line for 10 days. Client is permitted to
edit its traffic analysis profile(s). Integration fees may be applied if
Logicworks is engaged to set up additional profile(s) or modify profile(s).

15a Dedicated Traffic Analysis Service. If Client has elected for Dedicated
Traffic Analysis Service in Quotation, Logicworks will provide Client with use
of server for Traffic Analysis only, and Client shall not have administrative
access to the Dedicated Traffic Analysis Server. Logicworks shall dynamically
generate traffic analysis reports and make them available to Client. The
Dedicated Traffic Analysis Service shall include up to five (5) profiles
(hosts), and Client may add additional profiles subject to an additional cost
pursuant to additional Quotations. Logicworks will provide requisite software
licensing for the purpose of generating traffic analysis reports which will
include summary information on pages viewed, paths taken through the Website,
files accessed, visitors, demographics, activity, errors, referrers, and
browsers and operating systems. Traffic analysis reports include daily, weekly
and monthly reporting, and are typically generated within twenty-four (24) hours
of the analyzed period; reporting intervals may vary but will not exceed one (1)
week. Reports are available in downloadable formats and Client shall have the
ability to retain reports on Dedicated Traffic Analysis Server contingent upon
the amount of available disk space on server to store report data. Traffic
analysis reports will not be generated during scheduled maintenance windows.
Client is permitted to edit its traffic analysis profile(s). Integration fees
may be applied if Logicworks is engaged to set up additional profile(s) or
modify profile(s).

15b Limitations. Logicworks shall bear no responsibility or liability for third
party traffic analysis software that Logicworks may use in connection with the
traffic analysis services. The software used for traffic analysis services will
be selected and/or altered by Logicworks at Logicworks' discretion. In the event
that log files are not available or suitable for generating a report due to
Client actions, Logicworks shall not be responsible for producing a report. If
Logicworks fails to produce a traffic report per the requirements of this
Addendum or if the report has material errors, faults or mistakes of any kind or
nature, as the case may be, or if Logicworks cannot generate a retroactive
report using Client-provided log files, Client's sole remedy will be a service
credit equal to the monthly fee charged to Client during the previous month for
traffic analysis services, and if deemed appropriate, rebuild of hardware in
accordance with the terms of Section 11. In the event of Default (as defined in
Section 4.01 of the Master Service Agreement), Logicworks shall not be
responsible for maintaining Client data.

16. Usage Fees.
Bandwidth and Traffic Analysis fees, if applicable, shall be calculated as
follows:

16a Bandwidth. Client will be required to pay for the higher of inbound or
outbound bandwidth usage to the extent usage exceeds the amount of bandwidth
specified on Quotation, as measured by Logicworks at Dedicated Server's Ethernet
port on Logicworks' network, at the rate specified in the Quotation. If no rate
is specified in the Quotation, the rate will be as specified in Logicworks'
price list. Additional bandwidth will be billed in fifty (50) GB increments,
rounded up to the nearest 50GB, or nearest Mbps if bandwidth is calculated on
the basis of the 95th percentile utilization method. Bandwidth coverage will be
billed as it is incurred, and will reset at the end of each calendar month.

Logicworks reserves the right to require pre-payment for excess bandwidth. The
parties acknowledge that Bandwidth traffic is measured at Client's Dedicated
Server's public Ethernet port or public interface port of dedicated firewall, if
applicable, and therefore traffic analysis tools and reports do not accurately
reflect bandwidth usage for the purposes of this paragraph 16a. Bandwidth
related to backup services, if selected by Client, is not included in bandwidth
calculation. However, intra-server bandwidth traffic on the public interface
will be billable; i.e. Client will be responsible for ensuring that intra-server
traffic goes over private interface.

16b Traffic Analysis. Client agrees to pay the monthly fee as specified in the
Quotation for traffic analysis services. Fees will be based on the number of
hits to the Website(s), with the first one million (1,000,000) hits included in
the monthly fee and additional hits billed in two hundred and fifty thousand
(250,000) hit increments, at a rate specified in Logicworks' price list. Hits
are defined as the total number of HTTP requests that the Dedicated Server
receives during the reporting period. Hits will be calculated as of the last day
of the each calendar month. In determining Client's monthly fee for any given
month, Logicworks will calculate the aggregate number of hits to each of
Client's profiles. Logicworks' determination of hits will be based on the
reporting software and such determination will be conclusive.

16c. Disputed Amounts. If Client disputes any of the specific variable usage
fees described in this paragraph 16, Client must (a) send a written statement to
Logicworks setting forth the objection to such charge(s) in specific detail
within forty-five (45) days of the date of the invoice and (b) pay all
undisputed amounts on such invoice within forty-five (45) days of the invoice
date (a "Permitted Objection"). If Client fails to satisfy both requirements (a)
and (b), Client waives any such objection and such invoice shall be deemed to be
final and binding on Client. Upon receipt of a Permitted Objection, Logicworks
may dispute such Permitted Objection in writing within fifteen (15) days of
receipt and shall use commercially reasonable efforts to provide back-up to
Logicworks position (a "Dispute Notice"). If Logicworks does not dispute such
Permitted Objection in writing within such fifteen (15) day period, Logicworks
shall be deemed to have accepted such Permitted Objection and such Permitted
Objection shall be deemed to be final and binding on Logicworks. Client may
respond to a Dispute Notice in writing within ten (10) days of receipt outlining
Client's disagreement with the Dispute Notice (an "Ongoing Objection") and if
Client fails to so respond within such ten (10) days period, Client shall be
deemed to have accepted Logicworks Dispute Notice and such Dispute Notice shall
be deemed final and binding on Client. If Client sends an Ongoing Objection, the
parties shall endeavor to resolve the dispute by a meeting in person or via
telephone within ten (10) days of the Ongoing Objection. The parties            .
specifically acknowledge and agree that this paragraph 16(c) shall only apply to
disputes with respect to the variable usage fees set forth in this paragraph 16
and all other fees and charges, including without limitation, all monthly
recurring fees, and invoices shall be governed by, and subject to, Section 6.05
of the Master Service Agreement and not this Section 16(c).

17. End of Term Data Removal.
At the end of Committed Term or earlier termination of the Dedicated Server
Services, Client will have an additional ten (10) business days to remove stored
data from the Dedicated Server(s). However if termination is due to 4.01(i),
Logicworks reserves the right to withhold stored data until past due amounts
have been paid in full.  Logicworks otherwise agrees to cooperate fully with
Client  so as to achieve smooth transition of all stored data.  At the
conclusion of ten (10) business days, Logicworks will reclaim the Dedicated

Server(s) and all stored data will be destroyed. Logicworks shall not be
responsible for any damages or liability of any type or nature as a result of
such destruction of data.

18. Service Level Agreement.
Logicworks will use commercially reasonable efforts to ensure that the Dedicated
Server Service is active 99.999% of the time in any given calendar month. If
Logicworks fails to meet the foregoing uptime guarantee, Client's sole remedies
will be as follows:

18a. Service Credits. Client will be entitled to service credits for time during
which Client's Dedicated Server Service is inactive ("Server Downtime"). At
Client's request, Logicworks will calculate the total amount of Server
Downtime reported by Client in a calendar month. For each cumulative hour of
Server Downtime in the relevant calendar month, Client's account will be
credited for the equivalent of one day of Client's recurring monthly fee for the
Dedicated Server Service. Server Downtime will not include (i) downtime which
Client fails to report to Logicworks
within five (5) calendar days, (ii) downtime resulting from scheduled Logicworks
Network maintenance, (iii) disk formatting time, (iv) downtime caused by third
party software installed by Client or at Client's request, (v) downtime
caused by software written by Client, (vi) downtime caused by acts or omissions
of Client or agents of Client other than Logicworks, (vii) downtime caused by
inaccessibility on the Internet, unrelated to Logicworks' network or network
providers), (viii) downtime caused by Logicworks blocking Client data
communications in contravention of the AUP, (ix) downtime caused by restricted
activities pursuant to Sections 5a, 5b, and 5c of this Agreement, (x) downtime
caused by servers or services outside of Logicworks' datacenter facilities on
which the Dedicated Server Service is dependent (including
but not limited to domain controllers), which result in Service unavailability
(xi) downtime as a result of activities described in Section 10b or (xii)
downtime caused by an act of God, act of war, act of terrorism, fire,
governmental action, labor dispute or any other circumstances beyond Logicworks'
control (not including downtime due to loss of power and/or cooling). In no
event will the amount of service credits awarded to Client in any calendar month
exceed Client's monthly fees or be carried forward or backward to charges for a
different month.

18b. Termination Option. If the amount of Server Downtime suffered by Client
equals (i) more than four (4) consecutive hours in excess of disk formatting
time or (ii) more than twelve (12) cumulative hours in excess of
disk formatting time in any three (3) month period, Client will have the option
of terminating the Agreement and the Dedicated Server Service, provided that in
the case of Server Downtime exceeding four (4) consecutive hours, Client will be
required to
report the Server Downtime to Logicworks within five (5) calendar days of the
outage. For any termination pursuant to this paragraph 18(b), Client must
terminate within thirty (30) days of the existence of the right to terminate. If
Client
does not terminate within such 30 day period, (a) the right to terminate shall
be forfeited and (b) any such server downtime shall not be permitted to be
carried forward and used with other downtime (or otherwise) to terminate. Server
Downtime shall not be permitted to be carried forward or used in connection with
any other termination pursuant to clause (ii). The termination will be effective
immediately upon written notice is received by Logicworks.
In the event Client terminates the Agreement pursuant to this paragraph 18(b),
Client will not be

required to pay the Early Termination Charge (as defined in the Master Service Agreement).

19. Master Service Agreement. All aspects of the Dedicated Server Services, including, without limitation, the payment of fees and limitations on Logicworks' liability, will be governed by the terms of the Master Service Agreement of which this Addendum is a part.

Agreed to and Accepted:

LOGICWORKS

Company Name By: _____
Name:

By: _____ _Stephen J. Attar_ ,Title: CEO
Name:Date:                          CEO RCM1, IC
Title:
Date:

_Gegskichuft_
_Ve > AE_
_10/3/07_

Addendum No. 2 to Master Service Agreement between Logicworks® and
Real Capital Markets ("Client")

Logicworks®
Managed Database Service Agreement


This Addendum sets forth the agreement between Logicworks® and Client concerning
an arrangement whereby Client will use server(s) and services provided by
Logicworks.

1. Managed Database Service.
Logicworks will provide Client with Managed Database Services, as specified in
Quotation, performed within Logicworks' datacenter facilities, Network
Operations Center support, installing the database application, installing
and/or upgrading any server software and security patches, generating regular
status reports (configuration of built-in reporting tools), management of
database backups and data restoration, combining the chosen hardware and
software components that make up the database cluster (together, the "Cluster"),
managing failover and fail-back scenarios, database monitoring for
identification of problems, alerting through comprehensive health-tests and
identification of root-cause of problems (together, the "Managed Database
Service"), subject to the restrictions of the Master Service Agreement,
Dedicated Server Agreement and this Addendum. Except as otherwise set forth, the
datacenter facilities, the Managed Database Services, and the Dedicated
Server(s) are provided on an "AS-IS" basis.


2. Committed Term.
The committed term (the "Committed Term") for the Managed Database Service is 27
months, commencing on the date the Managed Database Service is activated for
billing purposes, or as indicated on subsequent Quotations, whichever is longer.


3. Failover/Replication Restoration Procedures.
The failover procedures will be determined by the hardware and/or software
components selected by the Client as per the Quotation and the minimum
requirements as described in Section 11 of this Agreement. The failover
procedures and process are as follows:


3a. Dynamic Failover Procedure. In dynamic failover procedure, failover will be
automatic, with failover taking no more than thirty (30) seconds. Client
acknowledges that in the case of there being only 2 physical database servers,
until primary database server has been restored as per Section 11 of the
Dedicated Server Agreement, and fail-back procedures have been implemented,
database servers will not be configured in a redundant scenario.


3b. Replication Failover Procedure. In database replication scenario, Logicworks
will fail over to secondary database within 30 minutes from confirmation of
primary database failure. Client acknowledges that in the event of database
hardware failure or database hardware unavailability, failover is not
instantaneous but will be based upon the following pre-defined steps: (i) ensure
that all of the log files shipped to secondary database server have been
applied, (ii) place secondary database server into read-write mode, and (iii)
point web and application servers (as required) to secondary database server.
Client acknowledges that until problem with primary database server has been
remedied as per Section 11 of the Dedicated Server Agreement, and fail-back
procedures have been implemented, database servers will not be configured in a
redundant scenario.

3c. Replication Restoration Procedure. In the event that Client has failed over
to secondary database server, Logicworks will re-establish replication to the
restored primary database server, if possible. In addition to hardware
replacement provision as set forth in Section 11 of the Dedicated Server
Agreement, "Hardware Replacement", Logicworks will require approximately 4 hours
to re-establish replication according to the following steps: (i) provision
failed server on new hardware (ii) format disks, (iii) restore backup (iv) apply
transaction logs, (v) turn replication back on.

4. Fees for Managed Database Service.
Logicworks will provide Client with Managed Database Services and establish
Client's database Cluster, as specified in Quotation. Billing for Managed
Database Service shall commence when billing begins for the services described
in the Quotation, as specified in Section 6.01 of the Master Service Agreement.
The specific Managed Database Service to be established will be based on the
hardware configuration specified in Quotation. Unless specified in the Quotation
Client will provide valid licenses and support for all database software
licenses in accordance with Section 11 of this Agreement. The Managed
Database Service fees are exclusive of hardware (and software) fees specified in
Quotation. Monthly and one-time fees for the Managed Database Service will be
for a maximum of five (5) separate databases. If Client has more than 5
databases or adds additional databases to exceed 5 databases as permitted by
Section 8 of this Agreement, Client will be billed in one (1) database
increments at Logicworks' then current price list, or as otherwise specified in
Quotation. Billing for the Managed Database Service will begin concurrently with
Dedicated Server Service activation.

5. Migration.
Client may utilize Logicworks to provide database migration services. Migration
services shall be billed at an hourly rate, as described in Section 6.02 of the
Master Service Agreement, or as specified in the Quotation. The Managed Database
Service does not include migration of the database(s).

6. Testing.
Client is required to schedule testing of all database failover scenarios with
Logicworks. If failover of any database is not tested, Logicworks will not be
required to perform the Managed Database Services under this Agreement.

7. Monitoring and Alerting.
Client is required to specify, in writing, monitoring and alerting parameters as
well as notification and response procedures expected of Logicworks for specific
alert types. If Client fails to specify monitoring and alerting procedures,
Logicworks will not be required to perform the Managed Database Services under
this Agreement. In the event that Client requests changes to the monitoring and
alerting or notification procedures, Client will be required to notify
Logicworks in writing. Notwithstanding the foregoing, Client will be subject to
Section 14 ("Alert Notification") of the Dedicated Server Agreement.

8. Changes/Additions to Database(s).
If Client adds or modifies any database instances to the Cluster, in order for
these instances to become a part of the failover scenario, Client must notify
Logicworks of the modifications or additions prior to implementing such
modifications or additions, and will be required to test failover of the
instances in accordance with Section 6 of this Agreement. The addition of
database instances may require modifications to the Cluster, which may result in

integration charges, as described in Section 6.02 of the Master Service
Agreement.

9. Database Backup Configuration.
Replication and Dynamic failover will not protect from the corruption of data or
deletion of data from the database. In either of those scenarios, data will need
to be restored from the latest uncorrupted database backup. At the specific
direction of the Client, Logicworks will configure a database backup regimen
that will enable restoration to a point in time specified by Client. Additional
hardware may be required for off-server backup, and will be specified in the
Quotation. Client will need to communicate initial and any modifications to the
backup regimen in writing.

10. Limitations on Managed Database Services.
Client acknowledges that Logicworks' Managed Database Service is designed to
provide protection from hardware failures in accordance with estimated recovery
times which will be determined by the hardware and software configuration
(replication or dynamic failover) requested by Client. Client acknowledges that
Logicworks' Managed Database Service will not provide protection from failures
of any third-party database application or the data itself, including but not
limited to data corruption, memory leaks, inadequate hardware specifications, or
flaws (bugs), known and unknown, in database software, and limitations of
database software. Additionally, Client acknowledges that Logicworks is not
responsible for SQL queries, SQL statements or management of database contents.

11. Minimum Requirements.
If Client fails to comply with any of the foregoing, the Managed Database
Services will be suspended until Client so complies; provided that Client shall
continue to be obligated to pay for such services for the Committed Term.

11a. General.
The minimum hardware requirements for Client to be eligible to receive
Logicworks' Managed Database Service shall include the following: (i) a minimum
of two (2) physically separate database servers of equivalent hardware
specifications and if required, a minimum of two (2) dedicated storage arrays of
equivalent hardware specifications, (ii) each server shall contain SCSI disks if
Client is using on-board storage (in a replication scenario, except in the case
of MySQL, which can use on-board storage in dynamic scenario) or external
storage arrays (dynamic failover scenario), (iii) each database server or
storage array shall have adequate disk space for Client's data files, log files,
and backups, and must maintain adequate disk space for projected ninety (90) day
growth so as to not exceed a threshold of 85% total disk usage (iv) Logicworks
reserves the right to require use of requisite additional software (e.g.
Veritas) to manage the storage and failover process, and (v) all failover
scenarios are subject to testing, coordinated by Client and Logicworks. Web
servers and application servers dependent on database servers need to be
configured in accordance with Logicworks' recommended practices.

11b. Oracle Database. Client must have necessary Oracle 10g Standard Edition or
Oracle 10g Enterprise Edition license(s), or later, and requisite Oracle support
contracts. Logicworks will not provide the Managed Database Service for Clients
running Oracle 10g Standard Edition 1.

11c. Microsoft SQL Server. Client must have necessary Microsoft SQL Server
Enterprise Edition licenses, or can procure such licenses directly from
Logicworks at an additional cost. Logicworks will not provide the Managed

Database Service for Clients running Microsoft SQL Standard Edition, except in
the case where Client is utilizing MS SQL 2005 Standard in which case Client
must also, pursuant to quotation, dedicated one additional "witness" server as
to be a part of the Dedicated Server Service.

11d. MySQL Server.
Logicworks may require that Client have necessary commercial MySQL licensing, or
can procure such licenses directly from Logicworks at an additional cost.

11e. Limitations. Under no circumstances can Logicworks provide support for any
custom or additional 3rd Party software that may depend upon the database
application(s), or upon which the database application(s) are dependent.

12. Service Level Guarantee.
Logicworks will use commercially reasonable efforts to ensure that the Managed
Database Service will result in databases being active 100% of the time in any
given calendar month. If Logicworks fails to meet the foregoing uptime guarantee
or otherwise materially fails to perform any of its material obligations
pursuant to this Agreement, Client's sole remedies will be as follows:

12a. Service Credits. Client will be entitled to service credits equal to for
time during which Client's Managed Database Cluster is inactive ("Database
Service Downtime"), rendering the database cluster unavailable (i.e. hardware
components and prescribed failover methods have failed). At Client's request,
Logicworks will calculate the total amount of Database Service Downtime reported
by Client in a calendar month. For each cumulative hour of Database Service
Downtime in the relevant calendar month, Client's account will be credited for
the equivalent of 10 days of Client's recurring monthly fee for the Dedicated
Server Service as described in the Dedicated Server Agreement. If Client has
more than one database cluster, credits shall be based only on Dedicated Server
Services dependent on the unavailable cluster. Database Service Downtime will
not include (i) database downtime which Client fails to report to Logicworks
within five (5) calendar days, (ii) database downtime resulting from scheduled
Logicworks Network maintenance, (iii) inaccessibility of the database servers(s)
from certain servers where other servers can still access the database
server(s), (iv) downtime caused by third party software installed by Client or
at Client's request, (v) downtime caused by software written by Client, (vi)
database downtime caused by failure of Client to notify Logicworks of
changes/additions to database(s) as described in Section 8 of this Agreement,
(vii) database downtime incurred while failing over to secondary database in
Replication Scenario as described in Section 3 of this Agreement, (viii)
database downtime due to insufficient hardware resources, (ix) database downtime
caused by acts or omissions of Client or agents of Client other than Logicworks
(e.g. Client's modification of replication schedule), or, (x) database downtime
caused by inaccessibility on the Internet, unrelated to Logicworks' network or
network providers). In no event will the amount of service credits awarded to
Client in any thirty (30) day period exceed Client's monthly fees or be carried
forward or backward to charges for a different month.

12b. Termination Option. If the amount of Database Service Downtime suffered by
Client equals (i) more than two (2) consecutive hours or (ii) more than six (6)
cumulative hours in any three (3) month period, Client will have the option of
terminating the Dedicated Server Service and Managed Database Service and the
Agreement, provided that in the case of Database Service Downtime exceeding two
(2) consecutive hours, Client will be required to report the Database Service
Downtime to Logicworks within five (5) calendar days of the downtime. For any
termination pursuant to this paragraph 12(b), Client must terminate within

10/02/2007 18:19 FAX  7606025081         RCM1.COM                            ☑006/006

thirty (30) days of the existence of the right to terminate. If Client does not
terminate within such 30 day period, (a) the right to terminate shall be
forfeited and (b) any such database service downtime shall not be permitted to
be carried forward and used with other database service downtime (or otherwise)
to terminate. Database Service Downtime shall not be permitted to be carried
forward or used in connection with any other termination pursuant to clause
(ii). The termination will be effective thirty (30) days after written notice is
received by Logicworks. In the event Client terminates the Dedicated Server
Services and the Agreement pursuant to this paragraph 12(b), Client will not be
required to pay the Early Termination Charge (as defined in the Master Service
Agreement).

13. Master Service Agreement. All aspects of the Managed Database Services,
including, without limitation, the payment of fees and limitations on
Logicworks' liability, will be governed by the terms of the Master Service
Agreement of which this Addendum is a part.

Agreed to and Accepted:
LOGICWORKS

Company Name:

By: _____  CEO      By: _____
                 Stephen Altor              c/o  RCM1.com
Name: Name:
Title: Title:
Date: Date:

Greg Kikoff   h/V
              VP SALES)
              10/3/07

Exhibit B

**From:**   Steve Alter [salter@rcm1.com]

**Sent:**   Friday, December 14, 2007 1:54 PM

**To:**     lw-cancel

**Cc:**     Kenneth Ziegler; Ben Friedman; Chris Babcock

**Subject:** Notice of Termination

**VIA EMAIL (cancel@logicworks.net),
POSTAL MAIL, AND
FACSIMILE (212) 625-5463**

Logicworks
11 Beach Street
New York, NY 10013

### Re: Notice of Termination

Dear LogicWorks,

This shall serve to confirm that LogicWorks is and, since November 5 has been, in breach and default of the terms of the Master Services Agreement, together with all addendums thereto, in that LogicWorks has been unable to establish a reliable and suitable environment to host and/or manage our website and data.  While we appreciate the efforts that LogicWorks has apparently taken to correct the present and continuing situation, unless a reliable and suitable environment to host and manage our website and data can be established by 9:00 a.m. (PST) on Monday, December 17, 2007, then we do hereby exercise our rights under the Master Services Agreement to terminate the Master Services Agreement effective 9:01 a.m. (PST) on Monday, December 17, 2007.

Please note that in the event that the Master Services Agreement is deemed terminated, then we will require a full and complete refund of all monies paid to LogicWorks.  We will additionally require that all records, log files, user and site information, passwords, and data be immediately returned.

We appreciate the efforts that LogicWorks appears to be taking, but simply cannot afford to wait any longer.  We trust you understand and appreciate your cooperation.

Sincerely,

Steve Alter

_____

**Steve Alter**
**CEO/Founder**
Real Capital Markets
6120 Paseo Del Norte, Suite Q1
Carlsbad, California 92011
760-602-5080 ext. 225
salter@rcm1.com

eSolutions for Institutional Real Estate
www.rcm1.com

This message (and any associated files) is intended only for the use of cancel@logicworks.net, kziegler@logicworks.net, bf@logicworks.net, cbabcock@rcm1.com and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not cancel@logicworks.net, kziegler@logicworks.net, bf@logicworks.net, cbabcock@rcm1.com you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Any views or opinions presented are solely those of the author salter@rcm1.com and do not necessarily represent those of Real Capital Markets.

Exhibit C

**From:**   Steve Alter [salter@rcm1.com]
**Sent:**   Wednesday, December 19, 2007 1:38 PM
**To:**    lw-cancel
**Cc:**    Kenneth Ziegler; Carter Burden; Chris Babcock
**Subject:** RE: Notice of Termination

**VIA EMAIL (cancel@logicworks.net),**
**POSTAL MAIL, AND**
**FACSIMILE (212) 625-5463**

Logicworks
11 Beach Street
New York, NY 10013

### Re: Notice of Termination

Dear LogicWorks,

We note that LogicWorks was unable to provide the services set forth in the Master Services Agreement, together with all amendments thereto, by 9:00 a.m. on Monday, December 17, 2007. Accordingly, as set forth in our Notice of Termination of last week, the Master Services Agreement is deemed terminated.

Paragraph 4.04 of the Master Services Agreement sets forth LogicWorks' obligations upon termination. In this regard, we note that paragraph 4.04 obligates LogicWorks to "cooperate fully with Client so as to achieve a smooth transition of all records, log files, user and/or site information, and data as directed by Client." Accordingly, we are hereby requesting that LogicWorks immediately deliver to us all records, log files, user and site information, passwords, and data so that we may have our site hosted with another provider. Additionally, we request LogicWorks' continued cooperation so that we may insure seamless transfer of DNS responsibilities to a new provider by Friday, December 21, 2007.

We appreciate your immediate attention to this matter and look forward to your cooperation during this period of post-termination transition.

Sincerely,

**Steve Alter**
**Founder/CEO**

cc: Chris Babcock
cc: Kenneth Ziegler
cc: Carter Burden

**Steve Alter**
**CEO/Founder**

Real Capital Markets
6120 Paseo Del Norte, Suite Q-1
Carlsbad, California 92011
760-602-5080 ext. 225
salter@rcm1.com

eSolutions for Institutional Real Estate
www.rcm1.com

This message (and any associated files) is intended only for the use of cancel@logicworks.net, kziegler@logicworks.net, cb@logicworks.net, cbabcock@rcm1.com and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not cancel@logicworks.net, kziegler@logicworks.net, cb@logicworks.net, cbabcock@rcm1.com you are hereby notified that any dissemination, copying or distribution of this message, or files associated with this message, is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer. Any views or opinions presented are solely those of the author salter@rcm1.com and do not necessarily represent those of Real Capital Markets.

**From:** Steve Alter
**Sent:** Friday, December 14, 2007 10:54 AM
**To:** 'cancel@logicworks.net'
**Cc:** 'kziegler@logicworks.net'; 'bf@logicworks.net'; Chris Babcock
**Subject:** Notice of Termination

**<u>VIA EMAIL (cancel@logicworks.net),</u>**
**<u>POSTAL MAIL, AND</u>**
**<u>FACSIMILE (212) 625-5463</u>**

Logicworks
11 Beach Street
New York, NY 10013

### **Re: Notice of Termination**

Dear LogicWorks,

This shall serve to confirm that LogicWorks is and, since November 5 has been, in breach and default of the terms of the Master Services Agreement, together with all addendums thereto, in that LogicWorks has been unable to establish a reliable and suitable environment to host and/or manage our website and data. While we appreciate the efforts that LogicWorks has apparently taken to correct the present and continuing situation, unless a reliable and suitable environment to host and manage our website and data can be established by 9:00 a.m. (PST) on Monday, December 17, 2007, then we do hereby exercise our rights under the Master Services Agreement to terminate the Master Services Agreement effective 9:01 a.m. (PST) on Monday, December 17, 2007.

Please note that in the event that the Master Services Agreement is deemed terminated, then we will require a full and complete refund of all monies paid to LogicWorks. We will additionally require that all records, log files, user and site information, passwords, and data be immediately returned.

We appreciate the efforts that LogicWorks appears to be taking, but simply cannot afford to wait any longer. We trust you understand and appreciate your cooperation.

Sincerely,

**Steve Alter**
**Founder/CEO**

Exhibit D



1/22/2008

RE: Early Termination

Stephen Alter
CEO
Real Capital Market.com, LLC
6120 Paseo Del Norte
Suite Q-1
Carlsbad, CA 92011

Dear Mr. Alter:

This letter will serve as notification of acceptance of Real Capital Market's early termination as per section 4.03 of the Master Service Agreement which reads as follows:

> *4.03 Termination of Committed Term. (a) Either party may terminate the Services at the end of a Committed Term by giving notice to the other party in writing or via e-mail at least 30 calendar days prior thereto but, in the absence of such notice, the Services shall automatically renew on a month– to– month basis at Logicworks' then- current list prices until the Services have been renewed or terminated in writing. (b) If Client terminates the Services prior to the conclusion of a Committed Term for any reason other than a Logicworks default (as defined in paragraph 4.02 above) or Logicworks terminates the Services pursuant to a Default as defined in Section 4.01, Client will be required to pay an early termination charge equal to (i) 75% of the full monthly charges for the Services, without discounts, multiplied by the number of months remaining in the Committed Term plus (ii) any unpaid balances (together, the "Early Termination Charge"). The Early Termination Charge will be due and payable on the date the Client's termination is effective. Client understands and agrees that in the event Services are terminated prior the conclusion of a Committed Term, it will be difficult or impossible to ascertain Logicworks' damages, thus the Early Termination Charge is intended to establish reasonable liquidated damages in the event of cancellation and is not intended as a penalty.*

Enclosed please find invoices for your outstanding balance and early termination charges.

Sincerely,

Kenneth Ziegler
President and COO

Enclosures
cc: Carter Burden; James J. Miuccio, Esq.

logicworks

| | | INVOICE |
|---|---|---|
| Account Number | | REALCAPITAL |
| Account Executive | | BFRIEDMAN |
| Invoice Number | | V81271 |
| Invoice Date | | 1/23/2008 |
| Service Period | | ETC INVOICE |

Real Capital Markets
6120 Paseo Del Norte, Suite Q1
Carlsbad, CA 92011
Attn: Frances Worley

| Service | Service Description | QTY | Unit Price | Total |
|---|---|---|---|---|
| 02-SERVER-XEON-SCSI | rcm-web1 | 1 | $11,356.54 | $11,356.54 |
| 02-BK-BACKUP | rcm-web1 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-web2 | 1 | $11,356.54 | $11,356.54 |
| 02-BK-BACKUP | rcm-web2 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-web3 | 1 | $11,356.54 | $11,356.54 |
| 02-BK-BACKUP | rcm-web3 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-web4 | 1 | $11,356.54 | $11,356.54 |
| 02-BK-BACKUP | rcm-web4 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-dfs1 | 1 | $23,111.55 | $23,111.55 |
| 02-BK-BACKUP | rcm-dfs1 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-dfs2 | 1 | $23,111.55 | $23,111.55 |
| 02-BK-BACKUP | rcm-dfs2 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-db1 | 1 | $25,887.59 | $25,887.59 |
| 02-SW-VERITASVOLMANAGER | rcm-db1 veritasVM | 1 | $0.00 | $0.00 |
| 02-SW-VERITASCLUSTEROPTION | rcm-db1 veritasCM | 1 | $0.00 | $0.00 |
| 02-BK-BACKUP | rcm-db1 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-RAIDARRAY | rcm-array1 | 1 | $24,089.63 | $24,089.63 |
| 02-ST-SWITCH-FC8 | rcm-fcswitch1 | 1 | $0.00 | $0.00 |
| 02-BK-BACKUP | rcm-array1 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-db2 | 1 | $25,887.59 | $25,887.59 |
| 02-SW-VERITASVOLMANAGER | rcm-db2 veritasVM | 1 | $0.00 | $0.00 |
| 02-SW-VERITASCLUSTEROPTION | rcm-db2 veritasCM | 1 | $0.00 | $0.00 |
| 02-BK-BACKUP | rcm-db2 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-RAIDARRAY | rcm-array2 | 1 | $24,089.62 | $24,089.62 |
| 02-ST-SWITCH-FC8 | rcm-fcswitch2 | 1 | $0.00 | $0.00 |
| 02-BK-BACKUP | rcm-array2 bk | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-SERVER-FIREWALL | rcm-fw-pri | 1 | $0.00 | $0.00 |
| 02-SERVER-FIREWALL | rcm-fw-sec | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-ST-SWITCH-GB2960G24 | rcm-sw1 | 1 | $0.00 | $0.00 |
| 02-ST-SWITCH-GB2960G24 | rcm-sw2 | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-LB-DEDICATED | rcm-lb-pri | 1 | $0.00 | $0.00 |
| 02-LB-DEDICATED | rcm-lb-sec | 1 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | 1 | $0.00 | $0.00 |
| 02-DB-DATABASE-SERVICE | rcm databaseservices | 1 | $12,075.00 | $12,075.00 |
| 02-BK-BACKUP-COMMITTED | rcm bkcommit | 1,000 | $24.15 | $24,150.00 |
| 02-VPN-SINGLEUSER | rcm vpn | 5 | $0.00 | $0.00 |
| ----------------------------- | ----------------------------- | | $0.00 | $0.00 |
| 02-SERVER-XEON-SCSI | rcm-dfs3 | 1 | $0.00 | $0.00 |
| 02-BK-BACKUP | rcm-dfs3 bk | 1 | $0.00 | $0.00 |

Comments:

| | |
|---|---|
| Credit Balance | ($2,201.22) |
| Subtotal | $227,828.69 |
| Tax | $0.00 |
| **Invoice Total** | **$225,627.47** |